IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. BK 10-80444 |
| | ) | Chapter 7 |
| LUND, MARK T. and | ) | |
| NIGRIN, CHRISANN M., | ) | |
| | ) | |
| Debtors. | ) | |

## APPLICATION TO RETAIN REALTOR

COMES NOW, Richard D. Myers, Trustee herein, and moves the Court for an order authorizing said trustee to employ Sandra Turner and CBS Home Real Estate to sell the following property of the estate:

**6111-6113 Maple Street, Omaha, NE 68104 with a legal description of W 1/2 of Lot 3 and E 1/2 Lot 4, Blk 3, Halcyon Heights, an addition to the City of Omaha**

A commission of 8% of the gross sale price shall be earned by said Sandra Turner, CBS Home Real Estate if the property is sold within thirty days or 7% of the gross sale price after the thirty days has expired, pursuant to the attached Listing Agreement.

Applicant believes that said Sandra Turner and CBS Home Real Estate represent no interest adverse to the debtor, trustee, or the estate in the matters upon which they are to be engaged.

DATED: April 6, 2010.

RICHARD D. MYERS, TRUSTEE

By: /s/ Richard D. Myers
Richard D. Myers, #13000
MCGILL, GOTSDINER, WORKMAN & LEPP, P.C.
11404 West Dodge Road, Suite 500
Omaha, NE 68154-2576
(402) 492-9200
Attorneys for Trustee

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the above and foregoing APPLICATION TO RETAIN REALTOR AND AFFIDAVIT OF PROPOSED REAL ESTATE AGENT was served either electronically or by regular United States mail, postage prepaid, on this 6th day of April, 2010, upon the following: Patricia M. Fahey, Assistant United States Trustee, 111 South 18th Street, Suite 1148, Omaha, NE 68102, and Henry N. Carriger, John Turco Law Office, 2580 South 90th Street, Omaha, NE 68124

                                      /s/ Diane M. Wilson
                                      Diane M. Wilson
                                      Assistant to Richard D. Myers

 

# CBSHOME REAL ESTATE COMPANY COMMERCIAL LISTING CONTRACT
## NEBRASKA
(This is a legally binding contract. If not understood, seek legal advice.)

DATE: __3/26/2010__

**1. NAME OF BROKER FIRM:** _____ **CBSHOME REAL ESTATE COMPANY ("Broker")**, _____ Nebraska.

**2. APPOINTMENT OF BROKER:** In consideration of Broker's agreement to list and offer for sale the property described below, and to use its efforts to find a purchaser therefore, Seller (whether one or more) hereby gives Broker the sole and exclusive right for sale of real property legally described as __W 1/2 of Lot 3 and E 1/2 Lot 4, Blk 3 Halcyon Heights, an addition to the City of Omaha__ also known as: Address __6111-6113 Maple St.__ City __Omaha__ State __NE__ Zip __68104__

By appointing Broker as Seller's sole and exclusive agent, Seller agrees to conduct all negotiations for the sale of the Property through Broker and to refer to Broker all inquiries received in any form from any source during the term of this Agreement.

**3. DUTIES AND RESPONSIBILITIES OF SELLER LIMITED AGENT (AGENT):** Agent shall have the following duties and obligations: a.) To perform the terms of this agreement; b.) To exercise reasonable skill and care for Seller; c.) To promote the interest of Seller with the utmost good faith, loyalty and fidelity including: 1.) Seeking the price and terms which are acceptable to Seller except that Agent shall not be obligated to seek additional offers to purchase the property while the property is subject to a contract for purchase; or to seek additional offers to lease the property while the property is subject to a lease or letter of intent to lease; 2.) Presenting all written offers to and from Seller in a timely manner regardless of whether the property is subject to a contract for purchase or lease or letter of intent to lease (herein after collectively "purchase"); 3.) Disclosing in writing to Seller all adverse material facts actually known by Agent, and 4.) Advising Seller to obtain expert advice as to material matters of which Agent knows but the specifics of which are beyond the expertise of Agent; d.) To account in a timely manner for all money and property received; e.) To comply with the requirements of agency relationships as defined in Neb. Rev. Stat. §§76-2401 through 76-2430, the Nebraska Real Estate License Act, and any rules or regulations promulgated pursuant to such sections or act; and f.) To comply with any applicable federal, state and local laws, rules, regulations and ordinances, including fair housing and civil rights statutes and regulations.

**4. DUTIES AND RESPONSIBILITIES OF SELLER'S LIMITED AGENT AS A LIMITED DUAL AGENT:** Seller's Limited Agent (Seller's Agent) has disclosed to Seller that Broker permits Seller's Agent to act as an agent for sellers of property or for buyers of property, and with the informed written consent of both the Seller and Buyer of a particular property, to act as a Limited Dual Agent (Dual Agent) for both. Seller's Agent agrees to promptly notify Seller whenever Seller's Agent is also representing a buyer when that buyer becomes interested in acquiring Seller's property. Seller consents to Seller's Agent also serving as an agent of the Buyer for Seller's property and acknowledges that Seller's Agent will then be a Dual Agent of both Seller and Buyer, serving both Seller and Buyer as clients. As a Dual Agent, Seller's Agent will owe to the Buyer the following duties and obligations as a Buyer's Agent: a.) To perform the terms of the written agreement made with the Buyer; b.) To exercise reasonable skill and care for the Buyer; c.) To promote the interests of the Buyer with utmost good faith, loyalty and fidelity, including: 1.) Seeking a price and terms which are acceptable to the Buyer, except that the Buyer Agent shall not be obligated to seek other properties while the Buyer is a party to a contract to purchase property; 2.) Presenting all written offers to and from the Buyer in a timely manner regardless of whether the Buyer is already a party to a contract to purchase property; 3.) Disclosing in writing to the Buyer adverse material facts actually known by the Buyer's Agent; 4.) Advising the Buyer to obtain expert advice as to material matters about which the Buyer's Agent knows but the specifics of which are beyond the expertise of the Buyer's Agent; d.) To account in a timely manner for all money and property received; e.) To comply with all requirements of Neb. Rev. Stat. §§ 76-2401 to 76-2430, the Nebraska Real Estate License Act and any rules and regulations promulgated pursuant to such sections or act; and f.) Comply with any applicable federal, state and local laws, rules, regulations and ordinances, including fair housing and civil rights statutes and regulations. As a Dual Agent, Seller's Agent also continues to owe Seller the duties and obligations as a Seller's Agent set out in paragraph 3, and the Seller's Agent also continues to owe to Buyer the duties and obligations as a Buyer's Agent described above, except that a Dual Agent can disclose to one client any information the Dual Agent has gained from the other client which is relevant to the transaction or client, provided that Dual Agent cannot disclose, without the informed written consent of the client to whom the information pertains: a.) That Seller is willing to accept less than the asking price for the property; b.) That Buyer is willing to pay more than the purchase price offered for the property; c.) What the motivating factors are for any client buying or selling the property; and d.) That either client will agree to financing terms other than those offered by that client. A Dual Agent shall not disclose to one client any confidential information about the other client unless the disclosure is required by statute, rule or regulation or failure to disclose the information would constitute fraudulent misrepresentation. In the event that Seller's Agent becomes a Dual Agent, Seller's Agent will prepare and present to Buyer and Seller an Informed Written Consent at or before the time an offer to or from the Buyer is first presented. The Informed Written Consent (Dual Agency Agreement) will identify the Buyer and disclose the compensation agreement between Seller's Agent and Buyer, if any. Seller's Agent will be allowed to continue in the transaction as a Dual Agent only if the Informed Written Consent is signed by both Seller and Buyer.

**5. CONFIDENTIAL INFORMATION AND ADVERSE MATERIAL FACTS:** Agent shall not disclose any confidential information about Seller without Seller's permission, unless disclosure is required by statute, rule or regulation, or failure to disclose the information would constitute fraudulent misrepresentation. Agent is required to disclose adverse material facts to any prospective buyer. Adverse material facts may include but are not limited to, adverse material facts pertaining to: (i) any environmental hazards affecting the property which are required by law to be disclosed; (ii) physical condition of the property; (iii) any material defects in the property (including, but not limited to, structural defects, soil or environmental conditions, violations of health, zoning or building laws, non-conforming uses or zoning variances); (iv) any material defects in the title to the property; or (v) any material limitation on Seller's ability to perform under the terms of the contract. Seller(s) authorizes Broker to disclose to Buyer Agent(s) the existence of other offer(s) on the property.

**6. LISTING PERIOD:** The term of this contract shall begin __March 26, 2010__ and continue through __July 26, 2010__ , _____ , to _____ (Expiration Date)

**7. PRICE AND TERMS:** The listing price for the property shall be __Two hundred seventy thousand__ Dollars ($ __270,000.00__ ) on the following terms: __Cash, Conv__

INITIALS: SELLER _____ DATE: __3/26/2010__

F0017 Revised: (03/2009)          Page 1 of 4

8. **PROFESSIONAL FEE:** In consideration of services to be performed by Broker, Seller agrees to pay a commission of ~~7%~~ 8%___ 9%___ (select one) of the gross sales price, or a minimum fee of $_____ (whichever is greater), ~~plus a flat fee commission of $225.00 payable in cash~~ upon the happening of any of the following: (a) if a sale or exchange is made, or purchaser found, who is ready, willing and able to purchase or exchange the Property, before the Expiration Date of this listing, or (b) if a purchaser is found who executes an option to purchase or a lease with option to purchase ("Option") and if the Option is subsequently exercised, whether or not the Option is exercised during the term of this listing agreement, by Broker, Seller or any other person at the above price and terms or for any other price and terms Seller may agree to accept, or (c) if this agreement is revoked or violated by Seller, or (d) if Broker is prevented in closing the sale of this Property by existing claims, liens, judgments or suits pending against the Property, or the Seller thereof, or (e) if Broker is unfairly hindered by Seller in the showing of or attempting to sell the Property, within said period, or (f) if within 180 days after the Expiration Date of this listing Seller conveys, exchanges, options, or enters into a purchase agreement (whether or not the closing occurs within 180 days and the commission will be owed at closing), the Property to anyone due to Broker's efforts or advertising, performed under this listing, unless the Property is listed with another Broker. In the event of an exchange of the real property, payment to a 1031 exchange or otherwise, a commission will be paid at the time of exchange calculated as the above percentage of the listing price of the property.

9. **LEASE:** If Seller agrees to lease the Property during the above listing period, and a lease is negotiated during said period or afterward (as defined in 6 and 8 above) to a lessee to whom it was submitted by Broker, Seller or any other person during said listing period, Seller agrees to pay Broker a cash commission of _N/A_____, at the time such lease is executed for the term of the lease and any extensions and renewals thereof, for such leasing services. After execution of said lease, this sale listing shall nonetheless continue until expiration date, except any sale will be subject to the terms of such lease.

10. **LEASES:** The Property is subject to the following lease (if none, state none):

| Suite # | Tenant | Rent | Exp. Date | Options/Notes |
|---------|--------|------|-----------|---------------|
|         |        |      |           |               |
|         |        |      |           |               |
|         |        |      |           |               |
|         |        |      |           |               |

11. **EQUAL OPPORTUNITY:** It is unlawful to discriminate against any person in the terms, conditions or privileges of sale, purchase or lease of a dwelling or in the division of services or facilities in connection therewith because of race, color, religion, national origin, ethnic origin, familial status, sex or handicap.

12. **PRICE TO INCLUDE:** The Price shall include all attached equipment and fixtures, except _____

13. **PERSONAL PROPERTY:** The following personal property shall be included in the sale _____

14. **SMOKE DETECTORS:** Prior to closing, Seller agrees to install and maintain in working order, at Seller's expense, any smoke detectors required by law.

15. **SELLER'S CERTIFICATION:** Seller certifies that to the best of Seller's knowledge, information and belief, the following describes the true condition of the Property: a.) All items set forth in paragraphs 12 and 13 above to be included in the sale are, and will be, in good working order on possession; b.) There are no structural defects, either latent or apparent; c.) There is no evidence of wood infestation on the Property; d.) The lower level or basement level of all structures are free from leakage or seepage of water, and e.) There are no known conditions present or existing with respect to the Property, unless provided in writing, which may give rise to create Environmental Hazards or Liabilities, and that there are no enforcement actions pending or threatened in connection therewith. Seller agrees to inform Broker if it discovers any such Environmental Hazards or Liabilities during the term of this Listing Contract or any extension hereof, and to provide Broker with full information with respect thereto. However, if any of the above conditions are found on the Property and it is known or discovered that any such condition existed prior to closing, Seller agrees to indemnify and hold harmless Broker and Broker's salespersons, employees, associate brokers, cooperating broker or buyer's representative ("Broker Et Al"), from any and all causes of action, loss, damage or expense to which Broker Et Al may be subject in connection with this paragraph. Also, Seller agrees to indemnify and hold harmless Broker Et Al from any and all causes of action, loss, damage, expense, costs and attorney fees including, without limitation, any liens created on the property by actions of the Seller and any outstanding contracts affecting the property and any representations or omissions affecting the property. It is understood there will be a wood infestation inspection and Seller agrees to pay for any treatment and/or repairs required. Seller further represents that, to the best of Seller's knowledge, all the mechanical elements of the Property and the appliances being sold therewith including, but not limited to, heating, air conditioning, water heater, sewer, plumbing and electrical systems and any built-in appliances and all items set forth in Paragraphs 12 and 13 above to be included in the sale, are in proper working condition until delivery of possession, or will be restored to proper working condition as of the date of buyer's possession of the Property.

16. **ASSESSMENTS:** Seller agrees to pay any assessments for paving, curb, sidewalk or utilities previously constructed, or now under construction, but not yet assessed.

17. **EARNEST DEPOSIT ("Deposit"):** Broker is authorized to receive and deposit in a trust account Earnest Deposit money from prospective purchasers making written offers to acquire the Property, and Broker shall retain same until the closing unless transferred to an Escrow Agent. In the event of a dispute over the return or forfeiture of any Deposit held by the Broker/Escrow Agent, the Broker/Escrow Agent shall continue to hold Deposit in its trust account until Broker/Escrow Agent has a written release from all parties consenting to its disposition or until a civil action is filed to determine its disposition at which time the Broker/Escrow Agent may pay it into court. If the Deposit is forfeited by a Purchaser, after Broker's expenses are deducted, Seller shall receive one-half (1/2) and Broker one-half (1/2).

INITIALS: SELLER _____K_____ _____ DATE: _3/26/2010_

**18. ESCROW CLOSING:** Seller agrees that the closing of any sale made by Broker may be handled by an Escrow Agent or the Broker and that the fee charged by said Escrow Agent or the Broker shall be equally divided between Purchaser and Seller, unless Purchaser is obtaining a V.A. loan, then cost of closing shall be paid by Seller.

**19. TITLE AND CONVEYANCE:** Seller agrees to furnish a complete abstract of title certified to date of sale showing marketable title, or a title insurance commitment if necessary to complete the sale and to pay any expense incurred in perfecting the title in case the same is found defective, and convey within a reasonable period from date of acceptance of the offer, by general warranty deed, or ~~Trustee Deed~~ executed by all persons having any interest therein, and clear of all encumbrances except building and use restrictions and utility easements now of record.

**20. POSSESSION:** Possession to be given as agreed between buyer and seller in the purchase agreement, or *Closing*

**21. KEYS AND LOCK BOX:** Seller grants Broker permission to install and use a lock box containing a key to the Property. Seller acknowledges that: a.) a lock box and any other keys available to Broker will permit access to the Property by Broker and other cooperating Brokers together with potential purchasers; b.) Seller will maintain in force adequate insurance to protect Seller in the event of any damage, loss or claims arising from entry to Property by persons through the above use of the key and agrees to hold the Broker harmless from any loss, claim or damage resulting therefrom; c.) Seller will obtain and provide to Broker written permission from the occupant of the Property, if it is a person other than the Seller, allowing showings as described above, after giving occupant notice; and d.) Seller authorizes Broker to allow access to the property by other persons, including but not limited to appraisers, inspectors, utility company personnel, as necessary to complete a sale.

**22. MULTIPLE LISTING SERVICE ("MLS") AUTHORITY:** Seller authorizes Broker to process, advertise and distribute photographs and information about the Property through the MLS to its participants. Seller authorizes Broker to release price, financing and property information regarding the sale of the Property to the Multiple Listing Service (MLS) of the Omaha Area Board of REALTORS®, Inc., its participants and government entities.

**23. COOPERATING WITH OTHER BROKERS:** Broker's policy is to offer cooperation and compensation to other MLS brokers who sell your property through the MLS. Listing Company will not extend an offer of Seller subagency to any broker. Compensation is offered to buyer brokers as advertised in the MLS, subject to differing arrangements with specific companies. For the commission to be offered to specific cooperating brokers, please consult the Broker.

**24. LIMITATION ON BROKER'S COMPENSATION:** Broker shall not accept compensation from the Purchaser, the Buyer's agent or any entity participating in, or providing services for, the Sale without the written disclosure to the Seller.

**25. SIGNS AND ADVERTISING:** Broker is authorized to erect a "FOR SALE" sign on the Property, and, when sold, to place a "SOLD" sign thereon and otherwise reasonably advertise and promote the sale of the Property. This includes, but is not limited to, photographs and other information at the discretion of the Broker, except where prohibited by law.

**26. REMUNERATION:** Seller acknowledges and understands that Broker and/or its agents may receive financial remuneration from the sale of title insurance or other forms of insurance or products or services. Pursuant to the Real Estate Settlement Procedures Act (Regulation X), 24 CFR Part 3500, Seller acknowledges receipt of any necessary Controlled Business Arrangement Disclosure Statements.

**27. RELEASE OF LOAN INFORMATION:** Seller authorizes present lender to provide Broker and Escrow Agent information regarding the status of loan, including but not limited to, payoff information. *Subject to the rules of the U.S. Bankruptcy Code.*

\# *Great Southern BANK* Lender #1 *c/o Brian Doyle, Atty* Address _____ Phone # _____

\# *Deloris Lund* Lender #2 *c/o Rick Drews, Atty* Address _____ Phone # _____

Seller acknowledges being advised to review any mortgage(s) now existing on the Property with the understanding that there could be terms and conditions including, but not limited to, prepayment penalties, notice to lender of payoff, interest adjustments to the end of the month, escrow shortages, back real estate taxes, back mortgage payments and recapture clause, any or all of which may have some effect on the Seller's proceeds at the time of closing. Broker and its sales associates are not responsible for obtaining such information or its accuracy.

**28. FEDERAL NOTICE:** CBSHOME is providing this notice. CBSHOME has title, mortgage and insurance affiliates that are committed to the highest quality of service. If you choose, however, you may limit the CBSHOME Real Estate companies from marketing their products or services to you based on your personal information that they receive from other CBSHOME Real Estate companies, such as your contact and transaction information. (Rest assured, we do not share your financial information with anyone). Your choice to limit marketing offers from CBSHOME Real Estate companies will apply until you tell us to change your choice. To limit marketing offers, contact us by telephone at 402-964-4655.

**29. ARBITRATION:** Any controversy or claim between the parties to this Exclusive Right to Sell Listing Contract, its interpretation, enforcement or breach, including claims arising from tort (which includes claims of fraud and fraud in the inducement), shall be settled by binding arbitration administered by and under the rules of Construction Arbitration Services (CAS). While either party shall have all the rights and benefits of arbitration, both parties are giving up the right to litigate such claims and disputes in a court or jury trial. The results, determinations, findings, judgments and/or awards rendered through such arbitration shall be final and binding on the parties hereto and may be specifically enforced by legal proceedings. Judgment on the award may be entered into any court having jurisdiction. Neither party shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity.

**30. ACKNOWLEDGMENTS:** For the purpose of this listing contract, the affiliated licensee(s) signing below as "Agent" will be the specific Sellers Limited Agent, and such other affiliated licensee(s) of Broker as may be assigned by Broker in writing, if needed as Seller's Limited Agents. The affiliated licensee(s) named and the Seller's Limited Agents who may be appointed by the Broker are collectively referred to in this Listing Contract as Seller's Agents. Seller and Broker acknowledge that they have read this contract that all information contained in this contract is true and accurate to the best of their knowledge and they have each received a copy of the executed contract.

*Property is sold "AS IS, Where Is"*

INITIALS: SELLER __K__    DATE: *3/26/2010*

F0017 Revised: (03/2009)    Page 3 of 4

**31. TELEPHONE NUMBER CONSENT:** Under federal and state "Do Not Call" laws, it may be necessary for Broker to have a consent to contact you regarding real estate related business transactions. Therefore, the undersigned grants Broker the right to contact the undersigned with the information listed below. The undersigned seller(s) grant broker, referring brokers, title companies, mortgage companies and vendors of Broker who provide real estate related services, the right to contact seller(s) at seller(s) home number which is (_____) _____ and cell numbers (_____) _____ (_____) _____

RECEIPT: Seller acknowledges a fully executed copy of this agreement. Signed this __26__ day of __March__ 2010.

THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

**CBSHOME REAL ESTATE COMPANY**
(Name of Broker or Firm)

_12112 Pacific ST_
(Broker Address)    (Office Phone)

_Omaha_    _NE_    _68154_
(City)    (State)    (Zip)

_Sandy Turner_
(Agent Name Typed/Printed)    (Home Phone)

By: _Sandy T_
(Agent Signature)

_Richard Myers, Trustee_
(Name of Corporation/Company), Seller

By: _[signature]_

Its: _____

(Seller Name Typed/Printed)

(Seller Signature) Trustee    _TBD_ (Soc. Sec. #)

_____
(Seller Name Typed/Printed)

_____
(Seller Signature)    (Soc. Sec. #)

_#500  11404 W. Dodge_
(Seller Address)

_Omaha_    _Ne_    _68154_
(City)    (State)    (Zip)

_4929200    2501418_
(Seller Home Phone)  (Office Phone)  (Office Phone)

_RDM@MGWL.COM_
(Seller's E-mail Address)

INITIALS: SELLER _____    DATE: _3/26/2010_